IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DEBORAH HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:07cv828-WC |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

Plaintiff Deborah Henderson (Henderson) applied for supplemental security income (SSI) benefits under title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 *et seq*. (Tr. 64-67), alleging she was unable to work because of a disability. Henderson's application was denied at the initial administrative level. Henderson then requested and received a hearing before an Administrative Law Judge (ALJ). Following two hearings, the ALJ also denied the claims. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. §

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. #7); Def.'s Consent to Jurisdiction (Doc. #8). Based on the Court's review of the record and the briefs of the parties, the Court AFFIRMS the Commissioner's decision.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity (RFC). *Id*. at 1238-39. RFC is what the claimant is still able to do despite his impairments and is based on all relevant medical and other evidence. *Id*. It also can contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] (grids) or call a vocational expert. *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.

---

[3]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The Court's review of the Commissioner's decision is a limited one. This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ISSUES

#### A.   *Introduction*

Henderson was forty-seven years old and had completed the tenth grade at the time

4

of the hearing before the ALJ. (Tr. 15). Henderson had no past relevant work experience. *Id*.

Employing the five-step process, the ALJ found Henderson had not engaged in substantial gainful activity at any time relevant to the decision (Step 1). (Tr. 16). At Step 2, the ALJ found Henderson suffered from the following severe impairments: bipolar disorder; fibromyalgia; and migraine headaches. *Id*. Nonetheless, the ALJ found Henderson did not possess an impairment or combination of impairments that met or equaled the criteria of any listed impairment set forth in the Listing of Impairments (Step 3). *Id*. Because Henderson had no past relevant work experience (Step 4), at Step 5, the ALJ evaluated Henderson's RFC, age, education, and lack of work experience, as well as testimony from a vocational expert (VE) regarding the availability in significant numbers of other work Henderson could perform in the national economy. Upon consideration of this evidence, the ALJ determined Henderson possessed the RFC to perform jobs that exist in significant numbers in the national economy. *Id*. Consequently, the ALJ found Henderson was not disabled within the meaning of the Act. *Id.*

### B.   *Henderson's Claims*

Henderson presents one issue for this Court to consider: Whether the ALJ properly evaluated Henderson's mental impairments.[5]

---

[5] Henderson argues several sub-issues under this single issue. Some of Henderson's complaints regarding the ALJ's determination are no more than one sentence long, and include no case law or even argument. They exist as broad statements. The Court will not address those generalized statements individually, but

## IV.   DISCUSSION

First, Henderson argues that the ALJ failed to address some of the objective medical status examination findings in his opinion. (Doc. #20 at 13). In response, the Commissioner admits that "[a]lthough it is true that the ALJ did not discuss every piece of evidence describing Plaintiff's mental impairments, the decision shows that he cited specific examination findings in support of his determination (Tr. 17-18)."  (Doc. #25 at 4).

Both parties are correct, the ALJ's decision is not overly detailed.  However, the "ALJ was not required to list in detail every bit of evidence he relied on to reach [his] decision." *Wilkinson v. Comm'r of Soc. Sec.*, 289 Fed. App'x. 384, at 386 (11th Cir. 2008) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).  The ALJ did discuss the treatment notes of the psychologists at the South Central Alabama Mental Health Center (the Center) and determined that based on the Center's 2004 report indicating that Henderson's mental functioning was normal and appropriate, as well as Dr. DeFrancisco's[6] determination that Henderson was blatantly malingering, Henderson did not suffer from a disability.  (Tr. 17). Also, in making that determination, the ALJ relied on Henderson's description of her daily activities, her subjective complaints, and the medical opinion evidence in the record.  *Id*.

---

will address the arguments Henderson makes in her complaint and consider those broad statements as part of Henderson's overall argument that the ALJ failed to properly evaluate her mental impairments.

[6]  Henderson also argued that the ALJ improperly relied on Dr. DeFrancisco's opinion that Henderson was malingering.  Dr. DeFrancisco arrived at that opinion after administering the MMPI-II and meeting with Henderson on two occasions.  Further, Dr. DeFrancisco's opinion that Henderson's claims of hallucinations was suspect is consistent with Henderson's treatment notes at the Center from the same time period, which did not indicate she was still suffering hallucinations.

"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was not the case here, is not a broad rejection which is 'not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole.'" *Dyer*, 395 F.3d at 1211 (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).

Next, Henderson argues the ALJ's determination was "internally inconsistent," because the ALJ determined that Henderson's mental impairments imposed a "moderate limitation in maintaining persistence, concentration, or pace (Tr. 17). Yet, the only mental functional limitation included in the ALJ's RFC finding was an occasional restriction with interaction with the general public and co-workers (Tr. 17)." (Doc. #20 at 13-14).

However, as the Commissioner correctly notes:

In addition to the social interaction restrictions cited by Plaintiff, the ALJ also limited Plaintiff to unskilled work (Tr. 17). The regulations define unskilled work as "work which needs little to no judgment to do simple duties that can be learned in a short period of time." 20 C.F.R. § 416.968(a).

(Doc. #25 at 6). Thus, the determination by the ALJ that Henderson could perform unskilled work, is not inconsistent with the ALJ's determination regarding Henderson's mental limitations.

Next, Henderson argues that it was error for the ALJ to rely on Dr. Eno's opinion because she did not have access to all of the evidence in the record. (Doc. #20 at 15). However, as noted above, the ALJ did not rely solely on Dr. Eno's opinion. Rather, the ALJ

considered all of the medical opinion evidence in the record. Furthermore, the regulations specifically instruct the ALJ to consider State agency reviewing psychologist opinions. *See* 20 C.F.R. § 416.927(f)(2). Therefore, the ALJ did not err in considering Dr. Eno's opinion.

Finally, Henderson argues that the ALJ erred in rejecting the opinion offered by Henderson's treating physician, Dr. Lopez, at the Center. (Doc. #20 at 15). The opinion of a treating physician "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004)(substantial evidence supported ALJ decision to give less weight to opinion of treating physician; remanded on other grounds) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "'Good cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id*. (citing *Lewis*, 125 F.3d at 1440). "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id*. (citing *Lewis*, 125 F.3d at 1440).

In this case, the ALJ articulated "good cause" for affording Dr. Lopez's opinion little weight (Tr. 17-18). Specifically, the ALJ stated that he afforded the opinion little weight because the opinion report was prepared just prior to Henderson's psychiatric admission for bipolar disorder and sedative dependance in withdrawal "and does not accurately portray her status for the duration period." (Tr. 17). As the ALJ states, "[w]hile her condition at the time of admission was at a disabling level, there was no period of 12 continuous months that

8

matched the [Dr.] Lopez assessment." (Tr. 18). Indeed, the record medical evidence surrounding the time periods before and after the hospitalization do not show Henderson's condition to be at a disabling level. As the ALJ stated, "[f]or example, 8 months after her hospitalization and after psychiatric treatment, she was reported to have normal behavior, full alertness, normal thought content, goal directed thought processes, good memory and attention span, good impulse control and average insight." (Tr. 17-18). Thus, Dr. Lopez's findings were not consistent with the other medical evidence in the record, and the ALJ provided good cause for affording his opinion little weight.

## V.   CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion and Order*, the Court concludes the ALJ's non-disability determination and denial of benefits is supported by substantial evidence. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate judgment is entered herewith.

DONE this 19th day of May, 2009.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE